We move the argument next in number 23-1992, Golden IT v. United States. Mr. Levin. Thank you, Your Honors. May it please the Court? I'm going to keep my comments brief. Your Honors have read the documents, and this is a fairly narrow and factual issue, so I just want to make two points. The Court erred in determining that there was no prejudice on price because Golden could not improve its price evaluation. But we contend that Golden did not have to improve its price evaluation, and there are two reasons for that. First, the government found that the awardees' prices were aligned and that they understood the... But it's undisputed, right, that the eight other offers that got awards had no risk on price? Yes, Your Honor. And your pricing proposal had risk? Yes, Your Honor. How is there any possible way you would have gotten one of those awards if they all had no risk and you have risk? Well, there are a couple of points I'd make in response to that. I think the first is to look to what the evaluators and the Source Selection Authority, or SSA, decided. And what they said was that the prices were aligned. No, but that's not what I'm asking because the trial court found that they properly evaluated as having some risk. I forget which term they used. And the other ones had no risk. And so whether your prices are in line with those or not doesn't go to the question of risk, and you're not challenging that risk determination here. And so once you're stuck with that risk determination versus no risk for the other ones, it doesn't really matter what the actual number is. It's the risk that's associated with which would take you out of getting an award, wouldn't it? I think what I would focus on, Your Honor, is not the prices that each offeror proposed or that the government awarded, but the language that the government used in making its decision. And so, yes, Your Honor, you are correct that Golden had moderate risk. But the agency's determination was focused on two other facts that are important. The first fact is that the agency found the labor categories to be in line. The second is that the offerors understood the requirements. And the point in our brief is that moderate risk rating notwithstanding, those are things that the agency found with respect to Golden, too. And so the court did consider the risk factor, but it did not consider all of the factors. But originally there would have been an award of six, right? Yes, Your Honor. And then they decided to award eight because they didn't have logical distinctions among the eight, right? Yes, Your Honor. But it sounds like they have a logical distinction between Golden and the remaining eight with this moderate risk. Well, that's a good question, Your Honor. I'm not sure I would agree with that characterization in its entirety. And, again, I'm just going to return to the, I don't want to beat the same language, but the government, the source selection authority in that memo, made an additional finding beyond that. She said that they understood the requirements and the pricing was fair and reasonable. And that's similar to what the evaluators found. And Golden presented the same facts. And so the trial court focused just on the risk factor, but it did not consider the entire basis for the agency's award determination. And I think that's a very important distinction. Because of the court's argument is that once all these non-price factors got fixed, that the agency, that your client had a potential to be awarded one of these contracts, even though it was moderate risk and everybody else was no risk. Yes, that is correct. Do you have any proof or suggestion that that would be the case? It seemed very illogical to me when they were trying to only award six and they ended up awarding eight that they would pile in a ninth that had a risk when nobody else did. That's a factual finding, this prejudice, right? So we have to find clear error in the logic of that or in the record that shows they would have considered. Do you have anything that suggests that the government would have added in a ninth offer that had a risk factor, but the other eight didn't? It doesn't sound to me like the way government contracts work. I think, Your Honor, that that is not the entirety of the agency's finding. And I think that's sort of the critical issue here. And then there is a secondary point. But that's what the prejudice finding is based on here, or the no prejudice finding. And that's what we're reviewing for clear error. As I read the decision, it is that there was no prejudice because Golden could not improve its price evaluation. And I don't think that is an accurate characterization based on the contemporaneous record itself. I don't understand what you mean by that. The government wasn't going to reopen this. They weren't required to reopen this. So you were stuck with the evaluation you got. They weren't going to give you a new evaluation on price just because you got other things corrected. So if that's correct, and I think there's certainly no clear error in the fact that they wouldn't have reopened the evaluation on price, then, again, you're still stuck with a risk factor. Your Honor, the Court will overturn, even if a factual finding was made, the Court will overturn, will overturn a decision if it has a definite and firm conviction that a mistake was made. And here, by not considering the entirety of the government's decision, the source selection authority, and the evaluation team, the trial court committed that clear error. Because the trial court contended or determined that the issue that created the risk was the sole determining factor in its decision-making process. And that is not accurate based on the record itself. And the record itself says, again, that Golden's labor categories were in line, which is exactly what it found with respect to the awardees. And that, based on the definition we have of moderate risk, that it had some confidence that Golden could perform the requirements. My understanding is part of the concern was about getting the correct caliber of staff with respect to the concern with Golden's proposal. Are you telling me that that concern was also raised with respect to one of the other bidders that were awarded? Thank you, Your Honor. No. Just to give you a straight answer, the answer is no. That was not considered. In response to that, and in response to the second point that Judge Hughes raised, the court did find that there was no record on the non-price factors. And there is no record of what the agency might have done had it had to contend with this. And the relevant information that I'm pointing to is confidential. But I would point you to Appendix 11657. There is information in the record that indicates that the agency may very well have reached a different decision had it considered, had it done a complete tradeoff based on that high confidence rating and the moderate risk rating, because there was some similarity there. And we don't have the record in front of us about what the agency. I'm sorry. I know you're trying to avoid saying anything that you're not supposed to say. But is that the point that you make in your reply brief but did not make in your blue brief about the relatively small dollar difference between at least one of the winners and your client? We were responding to the government's argument, Your Honor, that the agency, that the agent, that Golden's price was not, we couldn't have received the award. And we were responding to that point specifically and that's on pages 12 and 14. But yes, Your Honor, that is, we were responding to that. And do I remember correctly that the flaws that the claims court found in the agency's process did not go specifically to the reasons for thinking that your pricing, particularly about labor, was risky? The non-price factors, that's correct, Your Honor. These were two separate pages. Yes, Your Honor, they were two separate things. And I think to the extent it's a meaningful point, I think that's the most important distinguishing characteristic of the system studies and simulation case. Okay. You'll have your rebuttal time, or four minutes of it anyway, and we'll hear from the government. Thank you, Your Honors. Good morning and may it please the Court. I'd like to start with the argument that was made on page four of the reply brief and was touched upon here today, that there was a relatively small amount of difference, one percent or so, between Golden's total price, as it was proposed, and another offeror's price. This argument mixes apples and oranges. The agency assessed the moderate risk because Golden discounted its proposed labor rates. They heavily discounted those labor rates. But wasn't that a significant determinant of the bottom line price being offered? Yes, so the bottom line price was a function of two things, the proposed labor rates and the number of labor hours. So what Golden did was they heavily discounted their labor rates, but then they proposed dramatically more hours than any other offeror. And so the agency assessed Golden a moderate risk here because its discount of the rates was so high, that there was a concern that Golden couldn't attract the people that it would need to do the work. And a risk assessment like this is a quintessential judgment call for an agency to make, and it was plainly rational based on the discounts up to 54 percent in Golden's proposal. If I remember right, there hasn't been anything presented to us that there was a similar underlying situation with the close winner. Not at all, Your Honor. The offeror who was close in total price, their pricing was discounted no more than 26 percent off the GSA rates. So less than half of what Golden's was. So the way they got there was the point of concern, not the end point. And turning to the prejudice issue, the trial court did not clearly err when it found that Golden's proposal would still be inferior to all of the awarded proposals, even if the agency would have corrected some errors in the evaluation of Golden's technical proposal and its prior experience. Correcting those errors perhaps could have brought Golden up to the level of the awardees on the non-price factors, but Golden still would have had a problem. It still would have remained inferior on price because of its pricing risk, something that no awardee had. The agency was not looking to make an infinite number of awards. They only went from six to eight because they couldn't make a rational distinction between the eight awarded proposals. But here there was a clear distinction. Golden stuck out like a sore thumb because of those heavily discounted labor rates, which created the pricing risk. Counsel, I know that you can't speak to it, maybe liberally, in light of the fact that appendix page 11657 is confidential, but do you want to respond at some high level without revealing any confidential information on the open record to the citation that opposing counsel pointed us to? Your Honor, I would just say that there's no support on that page or anywhere else in this record that would suggest that the agency would make an award under these circumstances. I'm not sure I was tracking the... The page is 11657. I got the citation. I just don't understand the relevance of that page to the argument. But nevertheless, there's no support in this record for the suggestion that they would have, nonetheless, Golden would have received an award, notwithstanding the undisputed pricing problem with their pricing risk. And because the trial court properly found no prejudicial error based on the agency's rational risk assessment, this court should have found it. Thank you. Mr. Levin. Your Honors, I've already said everything that I think there is to say, and I can repeat myself or just rest on the arguments I've made. We love it when people give us back time. And 18-page briefs, even better. Thank you, Your Honor. We believe this is a very narrow and straightforward issue. Do Your Honors have any questions for me? Well said. Thank you. Thanks to both counsel and cases today.